IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

MICHAEL C.H.,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.

Case No. 1:23-cv-01373-JES-JEH

**Report and Recommendation**

Now before the Court is the Plaintiff's Brief (Doc. 11), the Defendant's Brief (Doc. 15), and the Plaintiff's Reply Brief (Doc. 17). This matter has been referred for a report and recommendation. For the reasons stated herein, the Court recommends the Plaintiff's request to reverse and remand the unfavorable decision of the Defendant, Martin O'Malley, Commissioner of Social Security, be granted.[1]

**I**

Michael C.H. filed an application for disability insurance benefits (DIB) on July 6, 2021, alleging disability beginning on March 5, 2017. Michael subsequently amended his alleged onset date to October 22, 2018. AR 17. Michael previously served in the Navy from 1995 to 1999. AR 189. He then completed college which took him approximately 12 years to complete, and his past relevant work was as

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 5) on the docket.

an accounting clerk and an insurance clerk. AR 34, AR 56-57, AR 81. When he applied for DIB, Michael claimed he could not work due to insomnia, fatigue, negative thoughts, PTSD, anxiety, and persistent depressive disorder. AR 69. Michael's DIB claim was denied initially on July 12, 2022 and upon reconsideration on November 7, 2022.

After a request for hearing before an administrative law judge, a hearing was held on June 5, 2023, before the Honorable Stephen Pope (ALJ). At the hearing, Michael was represented by an attorney, and Michael and a vocational expert (VE) testified. Following the hearing, Michael's claim was denied on June 20, 2023. His request for review by the Appeals Council was denied on August 3, 2023, making the ALJ's Decision the final decision of the Commissioner. Michael timely filed the instant civil action seeking review of the ALJ's Decision on October 2, 2023.

## II

Michael argues: 1) the ALJ's failure to adequately consider his own agency's reviewing psychologist's opinion and his unsupported rejection of the opinions of Michael's treating psychologist resulted in a mental residual functional capacity which was not supported by substantial evidence or the relevant legal standards; and 2) the ALJ committed reversible error in rejecting allegations Michael would have extreme difficulties functioning in a work environment for reasons which were "patently wrong."

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) is performing substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of

3

> impairments that is severe and meets the durational requirement;
>
> 3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;
>
> 4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and
>
> 5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Michael claims error on the ALJ's part at Steps Four and Five.

## A

At Step One, the ALJ determined Michael had not engaged in substantial gainful activity since October 22, 2018, the amended alleged onset date. AR 19. At Step Two, the ALJ determined Michael had the following severe impairments: PTSD; persistent depressive disorder; obesity; lumbago; and cervicalgia. *Id.* At Step Three, the ALJ determined Michael did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 20. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except he can never climb ladders, ropes or scaffolds, and occasionally climb ramps/stairs, balance, stoop, kneel, crouch or crawl. He is capable of performing simple, routine tasks with no interaction with the public, and only brief, superficial interaction with coworkers, and occasional interaction with supervisors.

AR 21-22. The ALJ concluded Michael was unable to perform any past relevant work. AR 33. At Step Five, the ALJ determined that considering Michael's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Michael could perform. AR 34. Therefore, the ALJ concluded Michael had not been under a disability from October 22, 2018 through the date of the Decision, June 20, 2023. AR 35.

**B**

Michael first argues that the ALJ failed to garner the necessary evidentiary support to bear his burden at Step Five of demonstrating that Michael, with all his limitations, could perform a significant number of jobs in the national economy. Michael argues that was the consequence of the ALJ's failure to adequately consider the reconsideration-stage State Agency reviewing psychologist's and Michael's treating psychologists' opinions. The Commissioner argues the reconsideration-stage State Agency reviewing psychologist's narrative finding aptly encapsulated his worksheet findings and Michael offered no cogent argument showing otherwise. The Commissioner further argues as to Michael's treating psychologist that the ALJ reasonably explained why the doctor's opinion was neither well-supported nor consistent with the evidence of record.

**1**

State Agency reviewing psychologist Howard Tin, Psy.D. completed a Mental Residual Functional Capacity (MRFC) form in which he checked with regard to sustained concentration and persistence limitations that Michael was

5

moderately limited in: the "ability to carry out detailed instructions;" the "ability to maintain attention and concentration for extended periods;" and the "ability to work in coordination with or in proximity to others without being distracted by them." AR 80. In the narrative section of that form pertaining to Michael's sustained concentration and persistence capacities and/or limitations, Dr. Tin wrote, in relevant part, "Claimant has difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time, however the person capable of performing simple routine tasks." *Id*. The Seventh Circuit has made clear that ALJs may rely on narrative explanations provided by State Agency doctors in the MRFC forms. *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019). But it has also explained that "even if an ALJ may rely on a narrative explanation, the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the [Psychiatric Review Technique] and MRFC forms." *Id.*; *see also Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) ("The ALJ must consider whether the consultants' narrative RFC assessments adequately encapsulated and translated the checklist") (internal quotation omitted).

Here, the ALJ's failure to explicitly confront the question of Michael's moderate limitation in sustained concentration and persistence when working in coordination with or in proximity to others without being distracted by them is troublesome. After all, Dr. Tin's narrative explanation as to Michael's sustained concentration and persistence capacities made no mention of that checked box, and Michael's social interaction limitations were considered *separately* in the MRFC form. AR 80. The Commissioner skirts this issue and argues the ALJ's RFC assessment "is on all fours with Dr. Tin's prior administrative medical finding." Dft's Brief (Doc. 15 at pg. 3). As Michael argues, any suggestion that the ALJ

covered that check box when he limited Michael to only "brief superficial interaction with coworkers" did not necessarily correlate to Michael's moderate limitation when working merely in proximity to others without being distracted by them. Thus, the reviewing Court is left wondering how the ALJ considered the evidence relevant to that checked box. *See Crowell v. Kijakazi*, 72 F.4th 810, 814 (7th Cir. 2023) (explaining that even under the deferential standard of review applied to disability appeals, "an administrative law judge must provide a logical bridge between the evidence and her conclusions").

## 2

Beyond that shortcoming, the ALJ's treatment of treating psychologist Todd Finnerty, Psy.D.'s opinion warrants remand. Dr. Finnerty opined that Michael was markedly impaired in all of the four domains of functioning (understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself) and should be considered to meet Listing 12.15 (Trauma- and stressor-related disorders) via paragraphs A and B. AR 977-78. The ALJ noted that Dr. Finnerty cited Brett Valette, Ph.D.'s report[2], including the Veterans' Administration rating of 100% service-connected disability (for persistent depressive disorder and other specified trauma disorder dating back to January 28, 2019) and the VA's determination Michael was housebound as of January 28, 2019. Both Dr. Valette and Dr. Finnerty, as well as Neil Jepson, Ph.D. and Jenna Rowen, Ph.D., detailed Michael's reports of being sexually harassed and sexually assaulted while he was in the service. AR 640 (Rowen); AR 686 (Jepson); AR 711 (Finnerty); AR 789 (Valette). In fact, throughout the record, Michael's fears of being sexually assaulted/raped again or of experiencing memories of the sexual assault were detailed. Dr. Valette

---

[2] Dr. Valette performed a psychological assessment of Michael in August 2022. AR 789-94.

7

additionally opined, among other things, that Michael could not understand, remember, and carry out simple one and two step instructions, could not interact appropriately with supervisors, co-workers, or the public, and could not maintain concentration and attention sufficient to carry out simple one and two step instructions. AR 32 (citing AR 794). Dr. Valette's examination of Michael revealed the latter was antsy/anxious and depressed, he had some impairment with respect to short-term/recent memory, and could not spell "world" correctly backward, but Michael's thought processes were clear and intact, he provided information that appeared to be accurate, his immediate memory was intact, and he could perform serial sevens. *Id*. (citing AR 792-93).

The ALJ reasoned Dr. Valette's "rather extreme conclusions suggest they were based largely on the claimant's self-reported symptoms." AR 32. The ALJ noted Dr. Valette's evaluation took place during a time when Michael was off all medications and not receiving any mental health treatment, and Dr. Valette's conclusion as to simple, unskilled work was not supported by his exam findings. *Id*. Thus, the ALJ referred to those reasons as reasons for finding Dr. Finnerty's reliance upon Dr. Valette's report not persuasive.

The ALJ also observed that Dr. Finnerty cited Michael's subjective allegations and work history as set forth in Dr. Valette's report and Dr. Valette's opinions based thereon, but Dr. Finnerty did not cite any objective findings by Dr. Valette, nor did he make any objective findings of his own. AR 33. As for findings cited by Dr. Finnerty on April 3, 2023, the ALJ observed those were based on his examination of Michael 2.5 years earlier on October 6, 2020. *Id*. The ALJ continued that the corresponding report by Dr. Finnerty on October 6, 2020 included few objective findings, and the findings and conclusions therein appeared to be based primarily on Michael's reported history and symptoms. At that time, Dr. Finnerty noted Michael's flattened, depressed affect and appropriate eye contact and

commented on Michael's concerning risk for suicide, though he did not deem Michael appropriate for involuntary admission. AR 715. The ALJ found both Dr. Valette's and Dr. Finnerty's opinions not consistent with the overall record, citing, among other things, Michael's ability to: take a 2.5 hour train ride to Chicago for treatment, get lunch while there, attend his appointments, and return home; shop and/or order groceries online and prepare basic meals or order delivery; pay bills; live independently; handle his own medical care; and arrange for landscaping and tree services to remediate the problem of his yard getting out of control. AR 33.

The ALJ recognized that Michael struggled in past employment, but reasoned there was nothing in either his employment records or Michael's own assertions that suggested he attempted to perform unskilled work or that he was unable to perform simple one and two step instructions. *Id.* He concluded the "single snapshots" of Drs. Valette and Finnerty did "not appear to be truly reflective of the claimant's longitudinal functioning." *Id.*

Per the regulations, the ALJ was not required to defer or give any specific evidentiary weight to any medical opinions, including from Michael's medical sources, and the most important factors which the ALJ was to consider in evaluating the persuasiveness of the medical opinions and prior administrative medical findings were supportability and consistency. 20 C.F.R. § 404.1520c(a). That said, the ALJ's application of § 404.1520c is fatally undermined in a few ways.

First, to the extent the ALJ rejected Dr. Finnerty's opinion for citing findings based upon examination of Michael 2.5 years earlier, Dr. Finnerty clearly stated in his April 3, 2023 report that his sources of information included his past examination of Michael on November 13, 2020[3], a records review at that time, and

---

[3] Neither party addresses the discrepancy between Dr. Finnerty's April 2023 report in which he identified the November 13, 2020 date and the ALJ's Decision in which the ALJ identified October 6, 2020 as the

9

he had "now reviewed the additional records up to the current time frame for the purpose of commenting on his Social Security disability claim." AR 977. The ALJ's reliance upon the fact of a dated examination is suspect where State Agency reviewing psychologist Dr. Tin rendered his opinion several months *before* that, on November 7, 2022, *and* where § 404.1520c(3)(v) states "[a] medical source may have a better understanding of your impairment(s) if he . . . examines you than if the medical source only reviews evidence in your folder." AR 82.

Second, and with regard to the examining relationship factor as well as the particular context of mental health impairments, the Seventh Circuit has stated:

> [P]sychiatric assessments normally are based primarily on what the patient tells the psychiatrist, so that if the judge were correct [that a doctor's testimony is to be discredited on the ground that it is based on what the claimant had told him], most psychiatric evidence would be totally excluded from social security disability proceedings – a position we rejected[.]

*Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015*); see also Aurand v. Colvin*, 654 F. App'x 831, 837 (7th Cir. 2016) (unpublished opinion) ("a psychological assessment is by necessity based on the patient's report of symptoms and responses to questioning"); *and Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019) (unpublished opinion) ("Mental-health assessments normally are based on what the patient says, but only after the doctor assesses those complaints through the objective lens of her professional expertise . . . Further, the trained physician, not the ALJ, is better positioned to discern 'true' complaints from exaggerated ones"). As Michael points out (and the ALJ cited to some extent in his Decision), Drs. Finnerty and Valette in fact observed *ab*normal symptoms when they examined

---

date on which Dr. Finnerty previously examined Michael. A psychological evaluation indicating a 10/06/2020 date of examination by Dr. Finnerty does appear in the record whereas a November 13, 2020 evaluation by him does not. AR 710.

10

Michael. Insofar as he found less persuasive Dr. Valette's and Dr. Finnerty's opinions because based upon Michael's subjective allegations, the ALJ failed to recognize such authority as *Price* and *Aurand*.

Third, the ALJ placed undue emphasis upon Michael's activities of daily living where he relied upon, among other things, the fact that Michael had the ability to take a 2.5 hour train ride to Chicago for treatment, get lunch while there, attend his appointments, and return home and arrange for landscaping to remediate his out of control yard. The Seventh Circuit has explained, "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer ." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). The ALJ's over emphasis is illustrated by the fact that he *six* times cited, as support for his findings as to Michael's retained abilities, Michael's train trips to Chicago. The ALJ's Decision reads such that he equated Michael's ability to take train trips to Chicago, arrange landscaping, order food, etcetera to Michael's ability to hold down a full-time job, albeit one involving unskilled work. As Michael argues, when he took the train to his medical appointments, he was presumably not trying to complete work tasks while doing so, he was not subjected to supervision or any expectation of a minimum standard of performance, nor did he likely have to interact or work with anyone in a professional manner. Indeed, "The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work." *Mendez v. Berryhill*, 439 F.3d 360, 362 (7th Cir. 2006). That goes for work period - unskilled or otherwise.

Ultimately, the ALJ's stated reasons for finding Dr. Valette's and Dr. Finnerty's opinions not persuasive do not adequately build an accurate and logical bridge between the evidence and the ALJ's conclusion. *See Crowell*, 72 F.4th at 815 (explaining the ALJ has done enough where he builds a logical bridge between the evidence and his conclusions). This precludes the Court from finding that substantial evidence supports the ALJ's Decision insofar as the medical opinions of record are concerned. *See Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (explaining a court's deferential level of review is lessened "where the ALJ's findings rest on an error or fact or logic").

## C

Next, Michael argues that the ALJ further deprived his RFC of the support of substantial evidence by dismissing Michael's credibility as it related to the severity of limitations to his basic daily functioning. The Commissioner argues the ALJ reasonably considered Michael's allegations and explained that he was not as limited as he claimed. The Commissioner further argues Michael wishes the ALJ would have found greater limitations but does not cite any treatment records supporting his argument.

20 C.F.R. § 404.1529 provides, in relevant part, that an ALJ will determine "the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence" in order to decide how the claimant's symptoms affect his work ability. 20 C.F.R. § 404.1529(a). SSR 16-3p provides that all the evidence, including objective medical evidence, is to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms as well as the factors set forth in 20 C.F.R. § 404.1529(c)(3). SSR 16-3p, at *7-8. Those factors include the claimant's daily activities, the type

and dosage of medication taken, and treatment the claimant receives or has received for relief of symptoms. *Id.*

Here, the ALJ's error in his consideration of Michael's daily activities in the context of the medical opinions infects his subjective symptom assessment. In addition, while the ALJ cited Michael's periods of noncompliance with medication and inconsistent treatment as reasons to discount the severity of his mental health symptoms, the ALJ did not delve into possible reasons for the noncompliance or inconsistency. *See Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013) ("an ALJ must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide"). This is particularly notable given the ALJ found Michael's severe impairments included PTSD and persistent depressive disorder. AR 19; *see, e.g., Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011) ("Anyway people with serious psychiatric problems are often incapable of taking their prescribed medications consistently").

In response to the ALJ's question at the hearing as to why he stopped taking medication, Michael responded there were a variety or reasons including that he was "caught in my head and so depressed that I'm too depressed to do almost anything and at times I've been too depressed to take the medication." AR 47. The ALJ did not confront that testimony in the Decision. *See Wood v. Kijakazi*, No. 22-CV-627, 2023 WL 1108714, at *8 (E.D. Wis. Jan. 30, 2023) ("Because failure to comply with treatment is often a product of the very impairment the treatment is intended to remedy . . . and [the plaintiff] indicated that his mental health impairments impeded his medication compliance, the ALJ erred in not—at the very least—addressing [the plaintiff's] explanation in his decision") (internal quotation omitted and collecting cases).

The foregoing raises a question as to the validity of the agency's ultimate findings. *See Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) (explaining that a "decision that lacks adequate discussion of the issues will be remanded"). Remand is warranted for the ALJ to build an accurate and logical bridge between the evidence and his conclusions as to the medical opinions of records and to properly confront the totality of the evidence for purposes of the subjective symptom analysis.

### IV

For the reasons set forth above, it is recommended that: 1) the Plaintiff's request to remand the unfavorable decision of the Defendant be granted; 2) the Commissioner's decision denying the Plaintiff's application for disability insurance benefits be reversed; and 3) this case be remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion pursuant to 42 U.S.C. § 405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on June 25, 2024.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE